May it please the Court, this is Stephen Hayden-Kahn and Matthew Elmhoffer on behalf of Petitioner-Appellant Brandon Wolcott. If I may, I'd like to begin with what I think is the central argument by this State, and that is that this Court's majority opinion in Moses v. Payne bars any habeas relief here. The State's interpretation of Moses v. Payne is that there is no clearly established legal authority or standard from the Supreme Court for evaluating a trial court's discretionary decision to exclude expert evidence. And therefore, Wolcott cannot challenge the exclusion of his alcohol expert on habeas review. Well, he can challenge it, but not successfully. If the State's sweeping interpretation of Moses is accepted, that would mean that every discretionary decision to exclude evidence would be beyond habeas review, no matter how critical that evidence was. For example, a State court could exclude testimony from a qualified expert interpreting DNA tests that found the blood on the defendant did not belong to the victim. It could exclude a qualified expert's testimony that fingerprints on a murder weapon belong to somebody other than the defendant. So it cannot be the case that the exclusion of outcome-determinative exculpatory impeachment evidence, particularly unassailable scientific evidence, is immune to habeas review. Well, nothing ñ nobody's arguing that it's immune. They're arguing that it's unsuccessful, which is different. And the State court of appeal did consider this question and held that the exclusion of this evidence was not arbitrary. Under the AEDPA standard of review, what was unreasonable, as well as wrong, about the State court's conclusion and reasoning? Well, to begin with, the State court got completely wrong what the witness's testimony had been. The State court, in conducting its balancing test, concluded that ñ or premised its ruling on its recollection that the complaining witness had testified that she was not drunk in any sense. Oh, excuse me, that she was ñ that she had testified that she was drunk and later qualified that she was not that drunk. Whereas, in fact, she had testified that she was not drunk in any sense, that she had a slight buzz, and that she was pretty clearheaded. So the State court's entire ruling is based on a fundamental misconception of what the testimony had been to that point and, therefore, the relevance. Could you tell me exactly what the pertinence of this evidence is? Because that will help me to see how important it is. I'm sorry, Your Honor. Exactly what the pertinence of this evidence was. One is ñ well, here's my two hypotheses. One is that it's important to know how drunk she was for purposes of her credibility in terms of memory, and another one is that there's some notion that might cut in both directions that the drunker she was, the more likely she ñ his story might be true. Yes. Those are at least two ways. There are additional ways. For example, I mean, the ñ it would have allowed the impeachment of her testimony that she was not drunk in any sense for the expert to present the fact that the 0.11 measured 4 to 5 hours after the events in question meant that she was more like 0.18. All right. So that's just saying ñ that's just by way of saying she lies. Is that one? Yes. Okay. The jury was given an instruction that if a witness lies on one important thing, that they can reasonably infer that she lied on other important things. I thought that there was evidence quite apart from the expert that she was very intoxicated. There was testimony from both of them about their drinking and how much they'd had to drink, and I thought that the detective who took her statement talked about her smelling of alcohol and that sort of thing. So your case is about the ability to present a defense. First of all, I'm not sure that it is a defense to rape to say the victim was drunk. But the information that she was intoxicated was certainly put before the jury in other ways, wasn't it? First, let me address one point you raised. Wolcott's defense was not that she was drunk, therefore it was ñ No. He said she agreed. Yes. He had a completely different version of events. Both versions of events were consistent with the physical evidence. The significance of this testimony ñ I'm sorry, Your Honor, I've forgotten the first part of your question. Well, the other part of the question was that this theory, which there were a lot of other pieces of evidence that showed she was drunk. Yes. Besides this expert. Well, the testimony of the two witnesses concerning who drank how much was in conflict. She said that they drank equal amounts and he said that she drank most ñ almost the entire bottle. Evidence ñ testimony from the alleged attacker from the defendant is clearly going to be seen as biased. But then the detective testifies that she has slurry speech and she smells like a brewery. I mean, I'm putting ñ that's not exactly what he says. But it's pretty clear that he thinks that she's drunk when she's giving her statement. So that supports your client's theory that she was drunk. Well, actually, Your Honor, I think what his ñ what the officer's testimony supports is that she had been drinking and that she had ñ was ñ had some level of intoxication. And the ñ there is, and I think most people, the jurors would certainly recognize that there's a continuum. You can have two or three drinks and it may affect you. You can have eight drinks, hard drinks in the space of an hour. Didn't the blood alcohol levels come in? Your pardon? The blood alcohol levels did come in, right? By stipulation. Yes. By stipulation, the jury learned that the complaining witness's blood alcohol level was 0.11 and ñ but, frankly, without an expert to interpret that, to extrapolate backwards and say that's really 0.18 because the urine samples per the complaining witness. I don't ñ honestly, I don't see how that helped you ñ would have helped your client because what it suggests to me is that she was too drunk to form the proper ability to consent and, therefore, by definition it would be rape even if he thought that she was consenting. I mean, I just think it entirely cuts the wrong way for your client. I don't understand why it's this egregious problem of not getting a fair trial. I really have difficulty with that. If that were the case, then the prosecution should have had no difficulty admitting the expert evidence to show that she was severely intoxicated. Everybody had their theory and their strategy. I guess what I'm suggesting is that in order to hold that there was a constitutional violation here, that he was prevented from getting a fair trial, we would have to be able to say that things could have come out differently if this had come in. Well, I believe they very ñ there's a substantial probability that they would have come out differently because it would have shown, A, that she lied under oath on the stand. But we knew that already. She had .11 and said, well, I really wasn't drunk. I mean, that's already a contradiction right there. Well, she said she admitted having a slight buzz. No, but also she said that ñ she said they drank a whole bottle. And she said that they drank equal amounts. But that was clearly not true because he had zero blood alcohol and she had .11. So one can fairly obviously say she drank a bottle ñ a pint of rum. But, I mean, that seems the only fair inference from the record. Well, I ñ the problem here is that the legers have no ability ñ Well, that doesn't require any information at all. other than that she obviously drank the whole bottle because he had no blood alcohol. Which already shows her to be a liar, which is what you want to do with this evidence. Well, I ñ I don't believe that the jury would appreciate the fact that what .11 is. I ñ I'm not even convinced in that it's higher or lower. But they would appreciate that drinking a whole bottle of rum is drinking a lot of rum. Yes. They would appreciate that. But the ñ they were only hearing from the defendant, who is biased, that she drank the whole bottle. Yes, the bottle was empty. No. We don't have the stipulated blood alcohol results. Right. Yes. Which show him to have zero. Right. Which meant because ñ That he wasn't drinking and he was telling the truth about who drank the rum. Well, because the defendant's blood alcohol test was taken hours later, he could have been, conceivably, he could have been had three, four ounces and still it could have dissipated from ñ and we don't know that all of the alcohol was consumed by both of them. But it clearly ñ The bottle. But it clearly contradicts her claim that they were equal. It clearly contradicts that. It ñ it does contradict that they had equal amounts. I don't think still that the jury would know what to do with or how ñ whether they could interpret .11 five hours earlier as being severely intoxicated and having the equivalent of 12 ounces of hard alcohol to yourself. Well, I guess I appreciate that your ñ your view is that this decision by the court was wrong, but I'm still having difficulty under the AEDPA standards seeing that it was both wrong and unreasonable to come to the conclusion that the court of appeal did. And I just ñ because we do have that level of deference that we have to apply. Well, Your Honor, if you look at what the court of appeal said in its analysis of the state's court ruling, it takes the position ñ it summarizes the testimony as they saw it, which includes her testimony that she did not believe her thinking was impaired by alcohol because they had not been drinking for very long, and that she was ñ although she was not completely sober, she said she was not so intoxicated that she would have lost any important details. So in essence, the court of appeal was just as misled as the jury was in terms of underplaying, downplaying, and accepting the downplaying of her level of intoxication. But your other problem, which you started with, is that we've all been assuming that somehow we could decide this case without Moses, but we have Moses. So that's a different problem. Well, Your Honor, Moses, in its amended form, and it was amended following a petition for rehearing, adds in several locations limiting language that limits it to the facts presented here and the relevant evidence in this case. And the evidence in Moses was very distinguishable in the sense that it was statistical probability evidence that 15 percent of persons with depression will sometime in their lifetimes attempt suicide. And, you know, if most moved the needle marginally in favor of the defendant in that case, it was not clearly exculpatory evidence, as we have here, or strong impeachment evidence, as we have here. And I'd like to reserve a little bit of time for rebuttal unless you would like to. You may do that, absolutely. Thank you. We'll hear from Ms. Chapman. May it please the Court. My name is Catherine Chapman. I represent the Respondent-Warden. I'd like to say just a word about Moses. I think this Court has well in mind what the holding of Moses is. But I notice that my opposing counsel tries to present a number of hypotheticals in which Moses should not apply. But the problem is this case is actually very factually similar to Moses in that it involves the exclusion of expert testimony under Washington Rule 702, which is very similar to California's Evidence Code 801 regarding the admissibility of expert testimony. And, in fact, I would say in Moses the excluded evidence was considerably more relevant than the evidence here because it went directly to Mr. Moses' defense that he didn't kill his wife, his wife committed suicide. And the expert evidence regarded the probability of suicide. Now, the issue in this case is not who was how drunk. The issue in this case is who was telling the truth in their testimony about what happened when a physical. But suppose, for example, that what had been excluded, and this is just by the reach of Moses, that what had been excluded was expert evidence on whether she was forcibly raped or not, medical evidence, and the judge refused to take it. Wouldn't that be a serious constitutional problem? Well, the thing is that that would still fall under Moses v. Hayes. I know it would, and it's or maybe it would, but it seems that it couldn't possibly be that that's not a constitutional problem if it goes to the core of the case and would have been quite believable expert testimony that she was not in fact raped. I would assume there's a point at which evidence can be described as so critical that it can't be excluded under the right to present a defense. You mean Moses can't mean what it says? Well, I think what Moses says is that there isn't a standard set by the United States Supreme Court for evaluating such a discretionary decision. There's standards for if a statute or rule by its own terms requires the exclusion of evidence. Okay. But if some judge for some reason got it in his head to not allow the defendant to defend himself by putting on the critical evidence, i.e., this couldn't have been a rape, that I just find it very unlikely that the more general standards about the ability to put on defense wouldn't kick in at that point. Well, when you talk about what the courts have said about the right to present a defense, what they say is courts, trial courts have wide latitude to exclude evidence that's marginally relevant or that risks harassment, prejudice, confusion of the issues. So I think you go to that standard. And maybe in one case the evidence isn't marginally relevant. Maybe the trial court got it right. Well, I understand that's why it's hypothetical. I mean, your argument is that here and in Moses itself, it wasn't critical. It was, you know, not absolutely central testimony. Certainly not in this case. I mean, let's look at what was this case really about. I mean, the evidence would have been evidence, as I understand it, a more precise measure of retrograde extrapolation to come up with exactly what her blood alcohol level was earlier in the evening. Well, this isn't a DUI case. This isn't a voluntary manslaughter case. I suppose the expert could also have said something about the likely impact of that much alcohol on either her ability to remember or her ability to consent. Yes, that's the problem. Well, that's the problem from a defense point of view. That is a problem. Sure. I mean, sure. Let's say that's possible. The problem is that's not the record before the State court. There was no offer of proof that that would be the testimony. But let's assume that it was. The issue of her memory, that wasn't the issue at trial. Her account of what happened tracked Mr. Wolcott's account very closely, right up to the point that the physical encounter escalated, and then their accounts diverged. One of them was lying. That was the issue. It wasn't the issue of who remembered better. The issue was who lied about that. And to say that she lied about that. They're trying to bolster that she lied when she said she wasn't that drunk or that she remembered, in spite of being drunk. I mean, that's the theory that I'm hearing today, is that it would have made it easier to argue that she was lying. Well, first of all, that's inconsistent with his defense at trial, which was by his own testimony, she lied because she got mad. She got mad because she, according to Mr. Wolcott, she said to him, I want us to be together. It's not inconsistent. I mean, it would be that this is just a demonstration that she was lying, because. It's an example of lying. But to me, it's a very different thing, because his account is she lied in maybe mad, but rational response to something he said. And that she said at that time, I'm going to say that you raped me. That's not drunken, unknowing behavior, according to his account. And the other thing I would say is I disagree that even if you presented evidence about having consumed that much alcohol, her memory was impaired, her conduct may have been affected. The fact is that wouldn't have shown she was lying about what she said in her testimony, because in her testimony, she didn't pretend to know exactly how drunk she was. And to the extent that she was wrong about how much she drank, that's because Mr. Wolcott misled her into how much she was drinking, because even at the time of trial, she thought that he was drinking with her. She took a sip, he took a sip. And, in fact, he was apparently not really taking sips. And the only, I mean, the most obvious inference to be drawn from that is that that was intentional behavior to make it easier to overpower her in the end. In any event, one thing I would like to put into context is Mr. Wolcott at this point places a lot of emphasis on her testimony that she said, I had a slight buzz, but I was not drunk in any sense. That was in response to a question on redirect examination in which she was asked, were you drunk during the course of this struggle? That is, at the time that the physical encounter had escalated, and he was, like, alternately putting his hands around her neck and choking her, and when she pushed his hands away, then trying to remove her clothes, and when she pushed his hands away, choking her again. Well, she could very well have thought that her attention and her mind was pretty focused at that point, so that she didn't feel drunk. That's not a lie. That's a perception. And her perception was, I think, adequately tested at trial through, the subject was covered through direct examination, cross-examination, redirect examination. As this Court pointed out, that wasn't the only evidence. Detective Sandoval testified that she appeared to be under the influence. The .11 was admitted by stipulation. And Mr. Wolcott, actually, Mr. Wolcott didn't have much to say about her intoxication. He didn't even testify that she appeared to be very intoxicated. And so when you look at the relevance of this evidence, it is marginal. It doesn't go to the heart of the case, and it does consume a certain amount of time and open the door to other issues when you bring an expert in and bring in some scientific evidence. So it's difficult to say under any standard of review that this was an abuse of the trial court's discretion. And when you go to apply Brecht, it becomes manifestly clear that relief is not warranted here because, as Mr. Wolcott fails to understand, it is not at all clear that that type of evidence was favorable to him at all. Could you briefly comment on the uncertified? Well, you don't need to because it's uncertified, but if you want to. On the uncertified question about the ineffective assistance with regard to the rape shield ball and whether she opened the door, whether the – as I understand it, there were several rulings with regard to whether her past history could come in and the complaint is that the lawyer didn't renew it at some – past some point. But, I mean, I understand it's uncertified if you don't want to say anything. It's difficult to comment on that issue at this point. Okay. That's fine. I do remember that I'm pretty sure that those ineffective assistance of counsel issues, which, as I remember, were all contained in Claim 2 of the habeas petition, were all unexhausted. I see. Okay. And I know – This is only my – I mean, my disquiet with this case is really not about the certified issue, and I'm not even sure it's exactly about the uncertified issue, but it's about what seems to me to be a, you know, what resulting from evidentiary ruling, a situation where his whole past came in and none of hers, and which could have influenced things, but that's not really the issue. Well, his conduct, and this also is a factor under Brecht, and if I might digress for just a moment, this wasn't just a credibility contest because there was the evidence of a prior rape that he pled guilty to just four years earlier. And that was very probative evidence, which, you know, that type of evidence, that type of propensity evidence that's so similar to the charged crime, that's admissible in every state. There's no question that type of evidence is admissible. Her past conduct, if I recall correctly, was like a disorderly conduct charge. She was sunbathing topless. Sunbathing topless. This is not the same thing at all. And I may be wrong in my recollection because I didn't prepare for the uncertified issues. That's fine. And I hasten to say that if the court wants supplemental briefing, I'm more than happy to provide it. If the Court has no further questions. I think we don't. Thank you. Thank you very much. You have a minute left. Thank you, Your Honor. I think all of the discussion about what was testified to and what was not underscores the importance of the scientific evidence in this case. I think if anything, the expert would have given very clear demonstration that the complaining witness was severely intoxicated, the type of evidence that a jury both will understand and will credit far beyond what the witnesses themselves have. But didn't the trial judge, in denying the proffered expert, cite that very fact and say, look, given the state of the evidence at this point, this is not something that the jury needs additional expert assistance on. They can figure out, based on their own life experiences, given the nature of her intoxication based on the blood alcohol and her own testimony and the testimony of the investigating detective, as to what impact it would have on her ability to perceive and recall the events. Well, the trial judge's summary of what the testimony was at that point was very off base in terms of the evidence. Well, you and I read the record a little differently, but if you can answer my question, didn't the trial judge cite to the fact that basically lay people understand that if you're too drunk and you can't remember very well what happened? That's essentially what he's saying. He cited to that part, and I would say that once jurors are given sufficient evidence to know how much somebody has consumed, they can refer to their own personal experience themselves or others they know, drinking, what happens when you drink. This is the other problem here, that she ran out and told that same story immediately. Right? So as your opponent said, I mean, this isn't really a question of whether she remembered things. It's a question of whether she was purposely lying. Yes. I mean, there's certainly the lie, but in addition, it goes to whether she was the soundness of her recollection on the details of what happened once the story was told. And told somebody standing there at that time what she said happened. Well, she went out and told them that she was, that she'd been raped. Right. But she did not go into the details of what had occurred. Counsel, I think we understand your position, and you have exceeded your time. Thank you. We appreciate the helpful arguments from both counsel, and the case is submitted.
judges: Graber, Berzon, Tallman